PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CLAUDY DORNVEIL, | ) | CASE NO. 4:25-CV-01809 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| KRISTI NOEM *et al.*, | ) | **MEMORANDUM OF** |
| | ) | **OPINION AND ORDER** |
| Respondents. | ) | [Resolving ECF Nos. 1, 5] |

This matter comes before the Court on Petitioner Claudy Dornveil's application for a Writ of *Habeas Corpus* under 28 U.S.C. § 2241 against the Government's Return of Writ and Motion to Dismiss. *See* ECF Nos. 1, 5. Petitioner is a 21-year-old Haitian in federal custody facing removal from the United States pending the outcome of an asylum hearing in March 2026. Respondents are Secretary Kristi Noem,[1] Director Todd Lyons,[2] Acting Director Robert Lynch,[3] Warden Edward Voorhies,[4] and Attorney General Pamela Bondi[5]—each represented by the United States Attorney under 28 U.S.C. § 517. On review, the Court concludes Petitioner's ongoing detention absent justification violates the Due Process Clause of the Fifth Amendment and the strictures of Administrative Procedure Act ("APA") of 1946. *See* U.S. Const. amend. V;

---

[1] United States Department of Homeland Security.

[2] United States Immigration and Customs Enforcement.

[3] Detroit Field Office, United States Immigration and Customs Enforcement.

[4] Northeast Ohio Correctional Center.

[5] United States Department of Justice.

(4:25-CV-01809)

5 U.S.C. § 706(2)(a). Consequently, both the Petition and Motion to Dismiss are granted in part and denied in part for the reasons herein.

## I. BACKGROUND

### A.

The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA")—progeny of the Immigration and Nationality Act of 1952 ("INA")—modified national immigration law in two relevant ways. See Othi v. Holder, 734 F.3d 259 (4th Cir. 2013). First, it replaced the INA framework for admitting noncitizens into the United States—turning on whether they physically entered the country—with a new assessment turning on whether they entered the country lawfully or unlawfully. See 8 U.S.C. § 1229. Second, it bifurcated deportation processes into "formal removal proceedings" for most categories of inadmissible noncitizens and "expedited removal proceedings" for a smaller subset therein (*e.g.*, recent unlawful and border-proximate arrivals, those lacking entry documents, purveyors of fraud, enumerated felons, *etc.*). See 8 U.S.C. § 1225(b)(1)(A)(i). The number of noncitizens detained under expedited proceedings has increased 400 percent in the preceding decade. See Office of Homeland Security Statistics, *Immigration Enforcement and Legal Processes Monthly Tables* (Dec. 9, 2025). The shifting and selective implementation of noncitizen removal from presidential administration to presidential administration has prompted an influx of analogous *habeas* petitions. See, e.g., E.V. v. Raycraft, No. 4:25-CV-2069 (N.D. Ohio filed Sept. 29, 2025); Lopez v. Raycraft, No. 4:25-CV-2449 (N.D. Ohio filed Nov. 11, 2025); Hammouda v. Dep't of Homeland Sec., No. 4:25-CV-02696 (N.D. Ohio filed Dec. 12, 2025)

Formal proceedings under 8 U.S.C. § 1229a are the standard mechanism for removing noncitizens deemed inadmissible to the United States. See Espinoza, 2025 WL 2581185, at *4

2

(4:25-CV-01809)

(E.D. Cal. Sept. 5, 2025) (citing *Coal. for Humane Immigrant Rts. v. Noem*, No. 1:25-CV-00872, 2025 WL 2192986, at *3 (D.D.C. Aug. 1, 2025). They run before an Executive Office for Immigration Review ("EOIR") immigration judge, an Article II employee responsible for record development and case administration. *See id.* (citing 8 U.S.C. § 1229a). Noncitizens in formal proceedings may retain legal counsel, examine and present evidence, cross-examine witnesses, and exercise related procedural rights. *See Coalition*, 2025 WL 2192986, at *3 (citing 8 U.S.C. § 1229a(b)(4)). Formal hearings are recorded and transcribed, and orders therefrom are generally appealable to the EOIR's Board of Immigration Appeals ("BIA"). *See id.*

Expedited proceedings under 8 U.S.C. § 1225, on the other hand, live up to their name. *See Make the Rd. New York v. Wolf*, 962 F.3d 612, 619 (D.C. Cir. 2020). They authorize the Department of Homeland Security ("DHS") to immediately remove specified categories of noncitizens present in the United States. *See id.* An immigration officer, rather than an immigration judge, adjudicates each noncitizen's identity, alienage, and admissibility. *See id*. Noncitizens are given a "credible fear interview" in which the immigration officer determines, *inter alia*, whether the noncitizen intends to seek asylum, fears persecution or torture on removal, or fears returning to their country of origin. *See id.* If the immigration officer finds that the noncitizen is inadmissible and lacks credible fear of harm, the EOIR issues an expedited removal order that often results in deportation within days. *See* 8 C.F.R. § 235.3(b)(2)(i); *Make the Rd. New York v. Noem*, 25-CV-190, 2025 WL 2494908, at *3 (D.D.C. Aug. 29, 2025). Expedited orders are generally not appealable to the BIA or Article III courts. *See id.*

Corollary to the legality of a noncitizen's removal from the United States is whether DHS may lawfully detain them pending deportation. First, 8 U.S.C. § 1225 applies broadly to most noncitizens seeking national entry (*i.e.*, any "alien in the United States who has not been

3

(4:25-CV-01809)

admitted or who arrives [therein]." 8 U.S.C. § 1225(a)(1). Those noncitizens seeking admission must be detained pending expedited removal proceedings under 8 U.S.C. § 1225. *See Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018); *Barrera v. Tindall*, No. 3:25-CV-541, 2025 WL 2690565, at *2 (W.D. Ky. Sept. 19, 2025) (recognizing detention under expedited removal is mandatory unless the noncitizen is "paroled for urgent humanitarian reasons or significant public benefit"). Conversely, 8 U.S.C. § 1226 is a catchall provision, applicable to noncitizens already present in the United States yet subject to removal. *See Jennings*, 583 U.S. at 288. Under § 1226, the United States Attorney General has broad discretion (typically delegated to DHS) to arrest and detain removable noncitizens present in the United States. *See id.* at 288–89. Detention under § 1226 is discretionary and generally implicates a bond hearing to determine whether the noncitizen poses a legitimate danger to the community or risk of flight to justify their abrogated freedom. *See id*.

**B.**

In 2023, DHS established the Haitian Humanitarian Parole ("HHP") program, under which Haitian nationals could seek parole entry into the United States. *See* 88 Fed. Reg. 1243. Under the HHP, noncitizens could apply for admission in advance, travel to an American port of entry, and attend a scheduled immigration appointment through a digital application called "CBP One." *See* 87 Fed. Reg. at 63515–16. On arrival, they would be considered for discretionary admission on an individualized basis. *See id.* at 63516. If admitted, the parole period would generally last up to two years. *See id.* In late 2024, DHS stopped re-paroling specific types of noncitizens legally present in the United States. *See Coalition*, 2025 WL 2192986, at *8. `Haitian parolees—alongside Cubans, Venezuelans, and Nicaraguans—were ordered to leave the

4

(4:25-CV-01809)

country or face forcible removal. *See* id. Five months later, under a new presidential administration, DHS terminated the HHP program. *See* 90 Fed. Reg. 13611–13612.

A coalition of noncitizens challenged the termination, and the United States District Court for the District of Massachusetts stayed DHS' parole action "insofar as it revokes, without case-by-case review, the previously granted parole and work authorization issued to noncitizens paroled into the United States . . . prior to the noncitizen's originally stated parole end date." *Doe v. Noem*, 778 F. Supp. 3d 311, 342 (D. Mass. 2025). The Supreme Court stayed that ruling in an unsigned order pending DHS' appeal to the United States Court of Appeals for the First Circuit and terminal petition for a writ of *certiorari*. *See Noem v. Doe*, 145 S. Ct. 1524, 1524 (2025). The superseding stay and parole termination remain in effect.

## C.

Petitioner Claudy Dornveil is a Haitian farmer and construction worker. *See* ECF No. 12–4 at PageID #: 117. He left home for Central America in 2023 and travelled north through Nicaragua, Honduras, Guatemala, and Mexico. *See* ECF No. 12–4 at PageID #: 119. On July 24, 2024, he crossed the international border at Brownville, Texas and entered the United States with a scheduled immigration appointment under CBP One. *See* ECF No. 12–4. After requesting asylum, he was designated as an "arriving alien," granted humanitarian parole under 8 U.S.C. § 1182(d)(5)(a), assigned social security and alien registration numbers, and issued a notice to appear before the EOIR for a formal removal hearing the following year under 28 U.S.C. § 1229a.[6] *See* ECF No. 1 at PageID #: 14. In the interim, he was admitted to the United States and moved to Ohio with his family. ECF No. 1 at PageID #: 14.

---

[6] Respondents contend that Petitioner "has not filed an application for asylum under the current proceedings." ECF No. 8 at PageID #: 72. The record contradicts that claim. Petitioner

5

(4:25-CV-01809)

Petitioner appeared for his scheduled EOIR removal hearing in Cleveland on July 7, 2025.  *See* ECF No. 5 at PageID #: 47.  The presiding immigration judge granted DHS' unopposed motion to dismiss formal removal proceedings under 8 C.F.R. 1239.2(c).  *See* ECF No. 13–3.  Believing he was free to go, Petitioner exited the courtroom.  *See* ECF No. 13–3.  He was immediately arrested by Immigration and Customs Enforcement ("ICE") officers, taken into federal custody, issued a new notice of expedited removal under 8 U.S.C. § 1225(b)(1), and driven to the Northeast Ohio Correctional Center ("NEOCC") in Youngstown for pre-removal detention.  *See* ECF No. 1 at PageID ##: 5–6; ECF No. 13–2.

**D.**

Petitioner filed the instant petition under 28 U.S.C. § 2241 on August 29, 2025.  *See* ECF No. 1.  He asserts five causes of action against Respondents:

> *Claim 1*—Violation of Fifth Amendment due process for denying his right to apply for asylum.
>
> *Claim 2*—Violation of Administrative Procedures Act ("APA") 5 U.S.C. § 706(2)(a) for revoking his release and detaining him without individualized consideration.
>
> *Claim 3*—Violation of Fifth Amendment due process for retroactive application of expedited removal proceedings.
>
> *Claim 4*—Violation of APA 5 U.S.C. § 706(2)(a) for initiating expedited removal proceedings.
>
> *Claim 5*—Violation of Fifth Amendment due process for revoking his release and detaining him without individualized consideration.

*See* ECF No. 1 at PageID ##: 16–22.  He seeks a declaration that his detention violates due process, a declaration that Respondents' removal designation is illegal as applied to him, a writ of *habeas corpus* ordering his immediate release, and associated costs.  *See* ECF No. 1 at PageID

---

applied for asylum when first entering the United States in 2024 and filed a renewed application in 2025 with the assistance of counsel.  *See* ECF No. 12 at PageID ##: 92, 96.

6

(4:25-CV-01809)

#: 23. Respondents entered return of writ and motion to dismiss, arguing therein that Petitioner has failed to exhaust the requisite administrative remedies, that his detention is lawful under 8 U.S.C. § 1225, and lack of subject matter jurisdiction under 8 U.S.C. § 1252. *See* ECF No. 5 at PageID ##: 49–54. Petitioner was issued a new notice to appear for an expedited removal hearing on October 2, 2025. *See* ECF Nos. 5, 12–2. The Court ordered a stay pending resolution of this petition. *See* ECF No. 7.

      Respondents subsequently notified the Court that—since this petition was filed—DHS has vacated Petitioner's expedited removal order, issued him a discretionary notice to appear before the EOIR, and reassigned him from expedited to formal removal proceedings, but also that he has not filed an application for asylum. *See* ECF No. 8. In light of these contentions, the Court ordered Petitioner to show cause as to why Claim 1 should not be dismissed for lack of standing, why Claims 3 and 4 should not be dismissed as moot, to specify whether he received an individualized detention consideration, and to specify his newly desired relief under formal proceedings. *See* ECF No. 10. The Parties timely responded. *See* ECF Nos. 12, 13.

      Petitioner argues Claim 1 should not be dismissed because he filed an asylum application on December 3, 2024 and "Respondents' statements to the contrary are inaccurate." [7] ECF Nos. 12 at PageID #: 92, 12–2. He argues Claims 3 and 4 should not be dismissed because he "continues to be injured due to the application of expedited removal proceedings against him" *via* continued detention. ECF No. 12 at PageID #: 92. He now seeks a detention bond hearing or release pending formal removal. ECF No. 12 at PageID ##: 93–94.

---

[7] While Petitioner claims he submitted his original asylum application on December 3, 2024, the form is dated November 23, 2024. *See* ECF No. 12–1.

7

(4:25-CV-01809)

Respondents argue Claim 1 should be dismissed because Petitioner has failed to exhaust all administrative remedies with the EOIR, BIA, and Sixth Circuit under 8 C.F.R. § 1003.38. They argue Claims 3 and 4 should be dismissed because Petitioner has been reassigned from expedited proceedings to formal proceedings as desired. *See* ECF No. 13 at PageID #: 128. They argue Claims 2 and 5 should be dismissed because "Petitioner did not request a bond hearing and was therefore not denied individualized consideration[.]" ECF No. 13 at PageID #: 128

At a master calendar hearing on September 25, 2025, the EOIR immigration judge ordered a continuance to allow Petitioner's counsel to file a notice of appearance. *See* ECF No. 8 at PageID ##: 72–73. Petitioner attended a contested removal hearing on October 30, 2025 wherein the immigration judge sustained removability and reset a master calendar hearing for November 13, 2025. *See* ECF No. 11 at PageID #: 85. At that hearing, the immigration judge scheduled a credible fear hearing for Petitioner's asylum application on February 9, 2026—later continued to March 27, 2026. *See* ECF Nos. 14 at PageID #: 141, 28 at PageID #: 169. In the interim, he remains in detention at NEOCC. *See* ECF No. 15 at PageID #: 143.

## II.  LAW

### A.

The obligations and protections of national law extend to all persons under the jurisdiction of the United States. *See Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (extending due process protection to noncitizens in removal proceedings); *Plyler v. Doe*, 457 U.S. 202, 210 (1982). Those unlawfully detained by the federal government in violation of the Constitution, federal law, or treaty are entitled to petition for a writ of *habeas corpus* compelling their immediate release absent legal justification. *See* U.S. Const. Art. I § 9; *Boumediene v. Bush*,

8

(4:25-CV-01809)

553 U.S. 723, 725 (2008). Pursuing *habeas* relief is guaranteed "to every individual detained within the United States[,]" including noncitizens challenging pre-removal detention. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9) (cleaned up); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides the statutory framework for *habeas* review and relief in federal courts. *See* 28 U.S.C. §§ 2241 *et seq.*

**B.**

Federal immigration law abrogates Article III jurisdiction in "complex ways." *Rahman v. Bondi*, 131 F.4th 399, 405 (6th Cir. 2025). By statute, district courts generally have no power to review the discretionary enforcement decisions of the Attorney General. *See* 8 U.S.C. § 1252(a)(2)(B)(i)–(ii); *id.* Respondents argue a lack subject matter jurisdiction to review Petitioner's claims under § 1252(g), which provides:

> [e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including [28 U.S.C. § 2241], or any other habeas corpus provision . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

Respondents misconstrue the law. Although the plain statutory language limits the Court's power to grant *habeas* relief to noncitizens challenging pre-removal detention, it does not divest jurisdiction wholesale. *See Puerto-Hernandez v. Lynch*, No. 1:25-CV-1097, 2025 WL 3012033, at *3 (W.D. Mich. Oct. 28, 2025). Rather, it narrowly inoculates from review "three discrete actions that the Attorney General may take: her decision or action to: (1) commence

9

(4:25-CV-01809)

proceedings, (2) adjudicate cases, or (3) execute removal orders."[8] *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471 (1999) (cleaned up). It is implausible "that the mention of [these] three discrete events along the road to deportation [is] a shorthand way of referring to *all* claims arising from deportation proceedings." *Id.* (emphasis added); see *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1 (2020). A majority of the Supreme Court rejected the notion that *habeas* challenges fall under the proscriptive shadow of 8 U.S.C. § 1252(g) in *Jennings*, 583 U.S. at 281 (Thomas, J., concurring).

    Consistent with the Supreme Court's interpretation, detention-based challenges in the Sixth Circuit are legally distinguishable from removal-based challenges. See *Hamama v. Adducci*, 912 F.3d 869, 877 (6th Cir. 2018) (noting a "district court's jurisdiction over the detention-based claims is independent of its jurisdiction over the removal-based claims."). Because Claims 2 and 5 do not seek "review of an order of removal, the decision to seek removal, or the process by which removability will be determined[,]" the Court has power to review—at minimum—Petitioner's detention-based causes of action.[9] See *Regents of Univ. of Cal.*, 591 U.S. at 19. This petition also presents questions of statutory and constitutional

---

[8] Thus, it does not bar review of due process or statutory violations. *See, e.g.*, *Munoz Materano v. Arteta*, No. 25 CV-6137, 2025 WL 2630826, at *10 (S.D.N.Y Sept. 12, 2025); *Patel v. Tindall*, No. 3:25-CV-373, 2025 WL 2823607, at * 2 (W.D. Ky. Oct. 3, 2025);

[9] Courts broadly agree. *See, e.g.*, *Eliseo v. Olson*, No. 25-3381, 2025 WL 2886729, at *5 (D. Minn. Oct. 8, 2025) (citing *Cardoso v. Reno*, 216 F.3d 512, 516 (5th Cir. 2000)); *Mosqueda v. Noem*, No. 5:25-CV-02304, 2025 WL 2591530, at *3 (C.D. Cal. Sept. 8, 2025); *Kostak v. Trump*, No. 3:25-CV-1093, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); *Leal-Hernandez v. Noem*, No. 1:25-CV-02428, 2025 WL 2430025, at 5–7 (D. Md. Aug. 24, 2025); *Espinoza*, 2025 WL 2675785, at *9; *Kong v. United States*, 62 F.4th 608, 617 (1st Cir. 2023); *Mustata v. Dep't of Just.*, 179 F.3d 1017, 1019 (6th Cir. 1999) *Requena-Rodriguez v. Pasquarell*, 190 F.3d 299, 304 (5th Cir. 1999).

10

(4:25-CV-01809)

interpretation requiring neither a developed agency record nor administrative exhaustion, as federal courts are neither bound by nor deferential to an agency's own statutory or regulatory interpretations.  *See* Loper Bright Enters. v. Raimondo, 144 S. Ct. 2244, 2273 (2024).  The Court does not, however, demarcate its jurisdictional limits for Claims 1, 3, and 4, as those removal-based causes of action are dismissed herein on procedural grounds.

### III.  DISCUSSION

This analysis proceeds under three verified presumptions.  First, noncitizens seeking lawful admission to the United States have comparatively limited constitutional rights as against the sovereign prerogative of national security and subordinate border control.  *See* Nishimura Ekiu v. United States, 142 U.S. 651, 659-60 (1892).  DHS thus has broad discretion to detain noncitizens eligible for removal and may detain those already present in the country pending removal.  *See* 8 U.S.C. §§ 1225(b), 1226(a); *Jennings*, 583 U.S. at 289.

Second, constitutional due process shields those present in the United States—citizen and noncitizen alike—from arbitrary governmental action that infringes on fundamental rights, including the right to freedom from confinement.  *See* Rosales-Garcia v. Holland, 322 F.3d 386, 408 (6th Cir. 2003).  There is also a statutory distinction between noncitizens who have "effected an entry" into the United States and noncitizens merely "stopped at the border." *Zadvydas*, 533 U.S. at 693; *see* Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 212 (1953).  This distinction is crucial, as noncitizens living herein are accorded greater constitutional protection from involuntary detention.  *See* *Zadvydas*, 533 U.S. at 693.  Noncitizen removability by itself is insufficient to justify prolonged and indeterminate detention.  *See* id.

Third, as discussed, a noncitizen's statutory removal designation (*i.e.*, formal or expedited) dictates whether their detention is mandatory or discretionary.  *Compare* 8 U.S.C. §

11

(4:25-CV-01809)

1225(b)(2)(A) with 8 U.S.C. § 1226(a); see *Chavez v. Dir. of Detroit Field Off.*, No. 4:25-CV-02061, 2025 WL 2959617, at *3 (N.D. Ohio Oct. 20, 2025). Detention is mandatory for noncitizens designated for expedited removal and perpetrators of enumerated criminal or terroristic conduct. See 8 U.S.C. § 1226(c). Conversely, detention is discretionary for those designated for formal removal, and their interim release is statutorily permissible on bond or parole at the discretion of the Attorney General or her delegees. See 8 U.S.C. § 1226(a)

A.

Petitioner contends that Respondents violated constitutional due process by denying his right to apply for asylum in the United States. See ECF No. 1 at PageID ##: 16–19. Respondents seek dismissal, claiming Petitioner failed to exhaust all administrative remedies before seeking relief in federal court. No applicable statute or rule, however, mandates exhaustion in this context. See *Puerto-Hernandez*, 2025 WL 3012033, at *6. The Sixth Circuit has not determined "whether courts should impose administrative exhaustion in the context of a noncitizen's habeas petition for unlawful mandatory detention." *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425, at *3 (E.D. Mich. Sept. 9, 2025); see *Hernandez v. Dep't of Homeland Sec.*, No. 1:25-CV-1621, 2025 WL 2444114, at *8 (N.D. Ohio Aug. 25, 2025). Thus, the Court may waive or require administrative exhaustion at its discretion. See *Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013). The Court does neither, as Petitioner has insufficient standing to pursue this claim. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).

Petitioner complains that Respondents denied his right to apply for asylum, yet he has submitted multiple asylum applications, see ECF No. 12 at PageID ##: 92, 96, and is scheduled for a merits hearing in February 2025. See ECF No. 16. Petitioner has therefore suffered no injury in fact as to Claim 1, nor can the Court grant redressability beyond that already given by

12

(4:25-CV-01809)

Respondents *via* the scheduled hearing. *See Lujan*, 504 U.S. at 555 *See id.* Claim 1 is dismissed.

### B.

Petitioner contends that Respondents violated constitutional due process and APA 5 U.S.C. § 706(2)(A) for retroactively designating him for expedited removal. *See* ECF No. 1 at PageID ##: 20–22. On September 14, 2025, DHS vacated Petitioner's expedited removal order and issued him a notice to appear for formal proceedings. *See* ECF No. 12–5. Because Petitioner is no longer subject to expedited removal, Claims 3 and 4 are moot and thus dismissed. Petitioner has received that which he sought.

### C.

Humanitarian parole for noncitizens is discretionary and may be terminated at any time. *See* 8 C.F.R. § 212.5(e). That said, once a noncitizen is admitted to the United States and develops national and communal ties herein, their constitutional and statutory protections correspondingly flourish.[10] *See Johnson v. Eisentrager*, 339 U.S. 763, 770 (1950). The Fifth Amendment prohibits governmental deprivations of life, liberty, and property without due process of law. *See* U.S. Const. amend. V. Its aegis extends to all persons in the United States and entitles noncitizens to procedural removal protections, including a "notice and opportunity to be heard appropriate to the nature of the case." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025); *see A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025).

---

[10] Noncitizens who have not entered the United States are entitled only to procedural protections authorized by Congress. *See id*. at 138–39

13

(4:25-CV-01809)

The Supreme Court has yet to address due process challenges to noncitizen detention under formal removal proceedings. *See Jennings*, 583 U.S. at 312.[11] Accordingly, and for now, "the balancing test set forth in [*Mathews v. Eldridge*, 424 U.S. 319 (1976)] . . . applies in the context of immigration detention" in the Sixth Circuit. *Escobar-Ruiz v. Raycraft*, No. 1:25-CV-1232, 2025 WL 3039255, at *6 (W.D. Mich. Oct. 31, 2025) (citing *United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020)); *see also Ballestros v. Noem*, No. 3:25-CV-594, 2025 WL 2880831, at *4 (W.D. Ky. Oct. 9, 2025). That test directs district courts to balance: (1) the private interest affected by the governmental action; (2) the risk of an erroneous deprivation of that interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the governmental interest, including fiscal or administrative burdens that additional or substitute procedural requirements would entail. *See Mathews*, 424 U.S. at 335. The Court concludes that Petitioner has a significant liberty interest affected by governmental action, the risk of erroneous deprivation of that interest is high given the severity of removal, and that interest outweighs the burdens on Respondents.

First, the right to freedom from confinement is elemental and unequivocal. *See Hamdi*, 542 U.S. at 529. Petitioner lawfully entered the country in 2024 and has lived here for over a year in reliance on the promise that compliance with his parole conditions would ensure freedom from detention and enjoyment of the same liberties held by citizens and noncitizens living, working, and socializing in the United States. *See* 88 Fed. Reg. 1243; *Morrissey v. Brewer*, 408 U.S. 471, 481–84 (1972). Consistent with a growing consensus, the Court finds that Petitioner

---

[11] Under *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020) mandatory detention in expedited removal is constitutional because noncitizens "who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'"

14

(4:25-CV-01809)

has developed a protected liberty interest during his time in the United States to presumptively remain free from detention pending formal removal.[12] In an analogous case, *Espinoza*, 2025 WL 2581185, at *1–3, noncitizens seeking asylum entered the United States in 2022 and were released on their own recognizance. Three years later, ICE arrested them, initiated formal removal proceedings, and held them in detention pending deportation. *See id*. The *Espinoza* court noted DHS previously interpreted § 1226(a) (permitting bond hearings) "to be an available detention authority for noncitizens . . . placed directly in full removal proceedings under [8 U.S.C. § 1229a]." *Id*. at *10. This changed in 2025, when DHS announced that "[e]ffective immediately . . . [applicants for admission] are subject to detention under INA § 235(b) and may not be released from ICE custody except by INA § 212(d)(5) parole.") *See* Immigration and Customs Enforcement, *Interim Guidance Regarding Detention Authority for Applicants for Admission*, Dep't of Homeland Security (July 8, 2025). The *Espinoza* court rightly held that DHS' new interpretation under § 1225(b) failed to account for the liberty interest created by paroled noncitizens lawfully living in the United States "*prior to the manifestation of* [*that*] *interpretation*." *Id*. at *10 (emphasis in original). Petitioner has similarly developed a protected interest during his time in the United States. "Were it true that arriving noncitizens have *no* due process rights, it would mean that such individuals—including those living freely among us on parole—could be subjected to punishment of hard labor without a judicial trial." *Clarveaux v. Searls*, 397 F. Supp. 3d 299, 316 (W.D.N.Y. 2019) (quoting *Zadvydas*, 533 U.S. at 704 (Scalia,

---

[12] *See, e.g.*, *Lopez-Arevelo v. Ripa*, No. 25-CV-337, 2025 WL 2691828, at *10 (W.D. Tex. 2025); *M.S.L. v. Bostock*, No. 6:25-CV-1204, 2025 WL 2430267, at *8 (D. Or. 2025); *Mata Velasquez v. Kurzdorfer*, No. 25-CV-493, 2025 WL 1953796, at *16 (W.D.N.Y. July 16, 2025).

15

(4:25-CV-01809)

J., dissenting)) (cleaned up).  In detaining Petitioner without justification, Respondents ignored that liberty interest and thereby violated constitutional due process.  See *id.* at *9–10.

Second, given the velocity of removal proceedings, Petitioner's continued detention without individualized assessment presents significant risk of erroneous rights deprivation.  There is considerable probable value in the obvious additional safeguard available: a bond hearing to adequately assess whether Petitioner poses a risk of danger or abscondment that justifies his detention at the price of his freedom.  *See, e.g.*, *Escobar-Ruiz*, 2025 WL 3039255, at *7 (citing *Lopez-Campos v. Raycraft*, No. 2:25-CV-12486, 2025 WL 2496379, at *9 (E.D. Mich. Aug. 29, 2025)); *Ballestros*, 2025 WL 2880831, at *5; *Munoz Materano*, 2025 WL 2630826, at *13.  While DHS has discretion to detain or release a noncitizen pending formal removal, once that noncitizen is released from custody—as Petitioner was when paroled into the United States in 2024—they establish a protected interest in continued freedom from confinement.  *See Rosado v. Figueroa*, No. CV-25-02157, 2025 WL 2337099, at *12 (D. Ariz. 2025 Aug. 11, 2025).

Third, the federal government's sovereign interest in immigration enforcement and border control, though unequivocal, is insufficient by itself to justify detaining a noncitizen indefinitely without a bond hearing.  *See Rosado*, 2025 WL 2337099, at *14 (concluding the government failed to identify specific justifications outweighing the individual's constitutionally protected liberty interests); *Lopez-Arevelo*, 2025 WL 2691828, at *12 (rejecting the federal government's argument regarding fiscal and administrative burdens associated with providing bond hearings because such hearings have been routine for decades.).  Petitioner underwent initial assessment at the border in 2024 and was lawfully admitted to the United States, indicative of DHS' determination that he was, at that time, neither dangerous nor flight.  *See, e.g.*, *Hernandez-Ferndandez v. Lyons*, No. 5:25-CV-773, 2025 WL 2976923, at *8 (W.D. Tex. Oct.

16

(4:25-CV-01809)

21, 2025). That determination holds value. The right to due process does not fluctuate with each new election cycle.

Because the *Mathews* factors favor Petitioner, his continued detention without individualized assessment (*i.e.,* a bond hearing) violates his constitutional right to due process under the Fifth Amendment.[13] *See* 424 U.S. at 335. His continued detention may be lawful, but Respondents must justify that determination by clear and convincing evidence.

### D.

Regarding his APA challenge, Petitioner contends that "by categorically revoking [his] release and detaining him without consideration of his individualized facts and circumstances, Respondents violated [6 U.S.C. § 706(2)(A)] of the APA." ECF No. 1 at PageID #: 19. That statute requires a district court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 6 U.S.C. § 706(2)(A). Agencies are bound to follow their own "existing valid regulations." *United States v. Accardi*, 347 U.S. 260, 266–68 (1954). Because the Court finds that Petitioner's unjustified detention violates constitutional due process, it is definitionally "not in accordance with law" and therefore also violates the APA. The greater harm necessarily encompasses the lesser.

---

[13] Aligned with broad recognition allowing due process challenges to detention without a bond hearing. *See, e.g.*, *Lopez-Arevelo*, 2025 WL 2691828, at *7–10; *Hernandez-Ferndandez*, 2025 WL 2976923, at *8; *Merino v. Ripa*, No. 25-23845-CV, 2025 WL 2941609, at *4 (S.D. Fla. Oct. 15, 2025); *Ochoa Ochoa*, 2025 WL 2938779, at *7 (N.D. Ill. Oct. 15, 2025); *see* *Escobar-Ruiz*, WL 3039255, at *6.

17

(4:25-CV-01809)

### E.

Warranting *habeas* relief in Claims 2 and 5, Petitioner requests immediate release from custody. ECF No. 1. Respondents argue that dismissal is warranted by claiming that Petitioner has neither requested nor is precluded from requesting such a hearing. *See* ECF No. 13 at PageID ##: 128–29. Petitioner counters that "clear factual errors and omissions in Respondent's official documents . . . suggests [sic] that careful consideration was not made in the decisions to detain and re-initiate removal proceedings[.]" ECF No. 12 at PageID #: 93.

When due process is violated, due process is the remedy. *See E.V. v. Raycraft*, No. 4:25-CV-2069, 2025 WL 3122837, at * 12 (N.D. Ohio Nov. 7, 2025). Here, that includes a bond hearing before the EOIR to justify Petitioner's detention or necessitate his release. *See, e.g.*, *Hernandez-Ferndandez*, 2025 WL 2976923, at *10–11; *Ochoa Ochoa*, 2025 WL 2938779, at *7 (citing *Velasco Lopez v. Decker*, 978 F.3d 842, 855 n.14 (2d Cir. 2020)); *Lopez-Campos*, 2025 WL 2496379, at *10; *Roman v. Noem*, No. 2:25-CV-1684, 2025 WL 2710211, at *6 (D. Nev. Sept. 23, 2025). Given the lack of clarity in the record, whether Petitioner has requested a hearing is indeterminate and inconsequential: due process demands he be afforded the opportunity to be heard. At that hearing, Respondents must show *by clear and convincing evidence* that should remain in detention because he is a danger to the community or a flight risk.[14] *See Hernandez-Ferndandez*, 2025 WL 2976923, at *11. If they fail to meet that burden, Petitioner must immediately be released from federal custody.

---

[14] Petitioner's "potential loss of liberty is so severe . . . [that] he should not have to share the risk of error equally [with the government.]" *Id.* at *10 (quoting *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 214 (3d Cir. 2020))

18

(4:25-CV-01809)

## IV. CONCLUSION

For these reasons, the Petition for a Writ of *Habeas Corpus* (ECF No. 1) and Respondents' Motion to Dismiss (ECF No. 5) are each granted in part and denied in part as follows:

(1) On Claim 1, the Motion to Dismiss is granted and the Petition denied for standing.

(2) On Claim 2, the Motion to Dismiss is denied and the Petition is granted.

(3) On Claim 3, the Motion to Dismiss is granted and the Petition denied as moot.

(4) On Claim 4, the Motion to Dismiss is granted and the Petition denied as moot.

(5) On Claim 5, the Motion to Dismiss is denied and the Petition is granted.

Therefore, the Court Orders that:

(A) Within seven days of this Order, Respondents shall grant Petitioner a post-deprivation hearing at which an immigration judge shall determine whether Respondents have demonstrated by clear and convincing evidence that Petitioner poses a danger to the community or a risk of flight. His counsel shall be present at that hearing.

(B) Within one day of that hearing, Respondents shall file a status report with the Court outlining the outcome of the hearing and include a copy of the immigration judge's determination.

(C) If the immigration judge determines that Respondents have not demonstrated by clear and convincing evidence that Petitioner poses a danger to the community or a risk of flight, he shall be immediately released from custody while undergoing formal removal.

(D) If Respondents disclaim authority to conduct an individualized assessment of Petitioner, he shall be immediately released from custody.

19

(4:25-CV-01809)

(E) If Petitioner is released from custody, Respondents shall not arrest or detain him absent constitutional and statutory compliance including, at minimum, a pre-deprivation notice describing the change of circumstances requiring the arrest and detention, and a timely hearing.

(F) No costs or fees are assessed.


IT IS SO ORDERED


| February 26, 2026 | /s/ Benita Y. Pearson |
|---|---|
| Date | Benita Y. Pearson |
| | United States District Judge |